UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
PARACO GAS CORPORATION, JOSEPH
ARMENTANO, and CHRISTINA ARMENTANO,

                                Plaintiffs,                   **OPINION & ORDER**

    - against -                            No. 22-CV-5557 (CS)

IRONSHORE INDEMNITY, INC.,

                                Defendant.
-------------------------------------------------------------x

Appearances:

Jan A. Marcus
Patrick V. DeIorio
Andrea H. Marcus
The DeIorio Law Group
Rye Brook, New York
*Counsel for Plaintiffs*

Jonathan Meer
Wilson Elser Moskowitz Edelman & Dicker LLP
New York, New York

James K. Thurston
Wilson Elser Moskowitz Edelman & Dicker LLP
Chicago, Illinois
*Counsel for Defendant*

Seibel, J.

       Before the Court is Defendant's motion to dismiss.  (ECF No. 26.)  For the following

reasons, the motion is GRANTED.

I.      **BACKGROUND**

      A.    **Facts**

       For the purposes of the motion, I accept as true the facts, but not the conclusions, set forth

in the Complaint.  (ECF No. 5 ("Compl.").)

Plaintiff Paraco Gas Corporation is a closely held corporation, owned and operated by members of the Armentano family, that markets and distributes propane fuel and equipment. (*Id.* ¶¶ 12-13.) Pursuant to its bylaws, Paraco has issued two classes of stock to its owners: Class A Voting Stock and Class B Non-Voting Stock. (*Id.* ¶ 14.)

Plaintiff Joseph Armentano is the Chief Executive Officer of Paraco, Chairman of Paraco's Board of Directors, and owner of a majority of both Paraco Class A Voting Stock and Paraco Class B Non-Voting Stock. (*Id.* ¶ 15.) Plaintiff Christina Armentano – Joseph's daughter – is a corporate officer of Paraco and a member of the Board, and has become an owner of Paraco Class A and Class B stock. (*Id.* ¶ 16.) Non-parties Robert and John Armentano, brothers of Joseph and former corporate officers and directors of Paraco, were owners of Class B stock. (*Id.* ¶¶ 19-20.)

### 1.      The Insurance Policy

Paraco purchased an insurance policy for Directors, Officers and Private Company Liability coverage (the "Policy") from Defendant Ironshore Indemnity, with Paraco as the named insured. (*Id.* ¶¶ 1, 31.) The terms of the Policy for the relevant period – August 12, 2019 through August 12, 2020, (*id.* ¶ 2) – included:

> The **Insurer** shall pay on behalf of an **Insured Person** all **Loss** which the **Insured Person** shall be legally obligated to pay as a result of a **Claim** . . . first made against the **Insured Person** during the Policy **Period** or the Discovery Period for a **Wrongful Act**, and reported to the **Insurer** . . . .

(ECF No. 28-1 ("Policy") § I.A (emphasis in original).) The Policy defines "Insured Person" as "Directors, Officers and Employees," (*id.* § II.M); "Loss" as including include settlements and "Costs of Defense," (*id.* § II.O); "Costs of Defense" as including "reasonable and necessary legal fees, costs and expenses incurred in the . . . defense . . . of any Claim," (*id.* § II.E); and "Claim"

as "a civil . . . proceeding made against any Insured seeking monetary or non-monetary relief and commenced by the service of a complaint," (*id.* § II.B).

        The Policy also contains a several exclusions, including:

> The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:
>  . . .
> alleging, arising out of, based upon or attributable to any actual or alleged contractual liability or obligation of . . . an **Insured Person** under any contract, agreement, employment contract or employment agreement to pay money, wages or any employee benefits of any kind.

(*Id.* § III.N (emphasis in original).)

## 2. The Underlying Action

        Over the years, the Armentanos have been involved in a series of civil lawsuits against one another relating to their ownership and management of Paraco. (Compl. ¶ 21.) Generally, Joseph and his brother Robert have been on opposing sides of these suits. (*Id.*) In July 2020, Robert, John, and Nancy Armentano as Trustee of the John Armentano Family Trust 2012 (the "Underlying Plaintiffs") sued Joseph, Christina, and the trustees of certain Joseph Armentano family trusts (the "Underlying Defendants"), both individually and derivatively on behalf of Paraco, in New York Supreme Court, Westchester County. (Compl. ¶ 22; ECF No. 5-1 (Complaint (the "UAC") in *Armentano v. Armentano*, No. 57449/2020 (N.Y. Sup Ct. 2020) (the "Underlying Action")).) Plaintiffs brought individual claims arising from Joseph's transfer of Class B shares to family trusts allegedly in violation of a right of first refusal and stock transfer provision in the Paraco Class B Shareholder Agreement,[1] and derivative claims on behalf of Paraco arising from his transfer of Class A shares to Christina and a family trust, allegedly in

---

[1] The UAC refers to the relevant agreement as the Paraco Class B Shareholder Agreement and as the Paraco Class B Stock Agreement. I use both terms interchangeably.

violation of a similar provision in the Class A Shareholder Agreement.[2]  (UAC at 1-2.)  They asserted ten causes of action:  three seeking specific performance for breach of contract, three seeking damages for breach of contract, three seeking a constructive trust, and one seeking a declaratory judgment that the agreement that purported to terminate the Class A Shareholder Agreement (the "Termination Agreement") is invalid.  (*Id.* ¶¶ 35-75.)  The parties eventually settled the Underlying Action.  (Compl. ¶ 38.)

Plaintiffs bring the instant action alleging that, despite proper notification and several requests, Defendant Ironshore refused to defend or indemnify Plaintiffs, who qualified as "Insured Person[s]" under the Policy, with respect to the claims against them in the Underlying Action.  (*Id.* ¶¶ 3, 31-34, 40.)

B.    **Procedural History**

Plaintiffs originally brought an action against Defendant in New York state court in 2021, asserting similar claims as those brought in the present suit.  (*Id.* ¶ 10.)  Defendant removed that case to this Court and successfully moved to dismiss based on a mandatory mediation provision in the insurance agreement.  *See* Notice of Removal, *Paraco Gas Corp. v. Ironshore Indem. Inc.*, No. 21-CV-3543 (S.D.N.Y. Apr. 21, 2021), ECF No. 1; Minute Entry, *Paraco*, No. 21-CV-3543 (S.D.N.Y. Sept. 1, 2021.)  The parties subsequently engaged in mediation but were unable to resolve their dispute.  (Compl. ¶ 11.)  After the expiration of the 90-day "cooling off period" mandated under the Policy, Plaintiffs commenced the present action in this Court on June 30, 2022, (*see id.*), seeking a declaratory judgment that Ironshore was obligated under the Policy to indemnify and compensate them for losses sustained in the Underlying Action and to provide

---

[2] The UAC refers to the relevant agreement as the Paraco Class A Shareholder Agreement and as the Paraco Class A Stock Agreement.  Again, I use both terms interchangeably.

them with a defense in that action, (*id.* ¶¶ 39-50), and asserting a claim for damages for breach of contract on the same grounds, (*id.* ¶¶ 51-56).

On July 20, 2022, Defendant filed a pre-motion letter, requesting a pre-motion conference in advance of its motion to dismiss.  (ECF No. 11.)  At a conference on September 1, 2022, the Court granted Plaintiffs leave to amend their Complaint (which they subsequently declined to do), and set a briefing schedule.  (*See* Minute Entry dated Sept. 1, 2022).  The instant motion followed.  (ECF Nos. 26-32.)

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[3]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).[4]

When deciding a motion to dismiss, a court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011).  To be incorporated by reference, the complaint must make "a clear, definite and substantial reference to the documents."  *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010).  "A document is integral to the complaint where the complaint relies heavily upon its terms and

---

[4] Plaintiff's counsel cites *Iqbal* and *Twombly*, but also argues that a court may dismiss for failure to state a claim "only when it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  (ECF No. 29 ("Ps' Opp.") at 9 (emphasis in original).)  But that standard, based on *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), was "retire[d]" by the Supreme Court in 2007 in *Twombly*, 550 U.S. at 562-63, and the applicable standard is now one of plausibility, *see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.  No attorney should be citing to or relying on the "no set of facts" standard fifteen years after it has been overruled.

effect.  Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotations from the document is not enough."  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

Defendant filed an affirmation in support of its motion to dismiss, (ECF No. 28), and attached as an exhibit a copy of the Policy, (ECF No. 28-1).  Plaintiffs, with their opposition, also filed an affirmation (the "Marcus Affirmation"), (ECF No. 30), which attached:  (1) an insurance agreement between the parties for the period of August 12, 2020 through August 12, 2021, (ECF No. 30-1); (2) the First Amended Complaint in the Underlying Action, (UAC); (3) the Class A Shareholder Agreement, (ECF No. 30-3); (4) the Class B Shareholder Agreement, (ECF No. 30-4); and (5) the Westchester Supreme Court's February 11, 2021 decision in the Underlying Action, (ECF No. 30-5).  Plaintiffs also attached Plaintiff Joseph Armentano's factual affidavit (the "Armentano Affidavit") in opposition.  (ECF No. 31.)

First, the Policy and the UAC (the latter of which was attached to the Complaint) are incorporated by reference in and otherwise integral to and relied on in the Complaint, (*see* Compl. ¶¶ 1-3, 10-11, 22-38, 40-48, 50, 52-56), and I will therefore consider these documents. As to the rest of Plaintiffs' exhibits, the insurance agreement they attach is not the relevant policy, as it bears a different policy number and provides for a different period of coverage, (ECF No. 30-1 at 2), and is thus irrelevant to the present dispute and will not be considered.  The two shareholder agreements, (ECF Nos. 30-3, 30-4), and the New York Supreme Court decision in the Underlying Action, (ECF No. 30-5), are not relevant to my decision.

Lastly, as to the Marcus Affirmation and Armentano Affidavit, declarations and affidavits submitted in support of a motion to dismiss "are generally properly used only to describe the documents attached to them as exhibits for the Court's consideration, not to advance

factual averments or legal arguments." *Clark v. Kitt*, No. 12-CV-8061, 2014 WL 4054284, at *7 (S.D.N.Y. Aug. 15, 2014), *aff'd*, 619 F. App'x 34 (2d Cir. 2015) (summary order).  Accordingly, because none of the attached documents are relevant except the UAC, which was already attached to the Complaint, I disregard the Marcus Affirmation and Armentano Affidavit.  *See HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881, 2012 WL 4477552, at *5 (S.D.N.Y. Sept. 27, 2012) ("[I]t is generally improper to consider factual averments or legal arguments contained in an attorney affidavit on a 12(b)(6) motion."); *Barshay v. Naithani*, No. 20-CV-8579, 2023 WL 2051170, at *6 (S.D.N.Y. Feb. 16, 2023) (disregarding plaintiff's affidavit because law clear that complaint cannot be modified by affidavit in opposition to motion to dismiss), *appeal filed*, No. 23-382 (2d Cir. May 17, 2023).

## III.    **DISCUSSION**

Defendant argues that because the claims in the Underlying Action arose out of Plaintiffs' alleged breach of contractual obligations in the Paraco Class A and B Shareholder Agreements, the contract exclusion in the Policy negated any duty to defend or indemnify Plaintiffs.  (ECF No. 27 ("D's Mem.") at 9-10.)  Plaintiffs contend that the exclusion provision does not apply to Count IV in the Underlying Action – the claim for declaratory judgment – and that this single cause of action triggered Defendant's obligation to defend and indemnify.  (Ps' Opp. at 8.)

### A.    **The Duty to Defend or Indemnify**

"[A]n insurer's obligation to indemnify an insured must be based on the insurance agreement." *Jakobson Shipyard, Inc. v. Aetna Cas. & Sur. Co.*, 961 F.2d 387, 389 (2d Cir.

1992).  Under New York law,[5] "[a]n insured has the burden of proving that the provisions of a policy provide coverage."  *Chase Manhattan Bank, N.A. v. Travelers Grp., Inc.*, 702 N.Y.S.2d 60, 61 (App. Div. 2000); *see Jakobson Shipyard*, 961 F.2d at 389.  This burden requires the insured to show that the allegations of the underlying complaint bring the action within the insuring clause of the policy purchased.  *See First Invs. Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 165-66 (2d Cir. 1998).

The insurer is relieved of its obligation to defend the insured only if there is "no possible factual or legal basis on which the insurer might eventually be held to be obligated" to indemnify the insured, "or the insurer can show that the allegations of the [underlying] complaint are solely and entirely within the policy exclusions, and that the allegations, *in toto*, are not subject to any other interpretation."  *Brooklyn L. Sch. v. Aetna Cas. & Sur. Co.*, 849 F.2d 788, 789 (2d Cir. 1988); *see Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins. Co.*, 955 F.3d 305, 310 (2d Cir. 2020) (insurer's obligation to defend terminates only if "no possible factual or legal basis" on which it might be obligated to indemnify under any provision of policy).  The burden is on the insurer to show an exclusion from coverage.  *Jakobson Shipyard*, 961 F.2d at 389; *see Village of Piermont v. Am. Alt. Ins. Corp.*, 151 F. Supp. 3d 438, 448 (S.D.N.Y. 2015) ("When an exclusion clause is relied upon to deny coverage, the burden rests upon the insurance company to demonstrate that the allegations of the complaint can be interpreted only to exclude coverage.").

---

[5] The parties do not dispute that New York law applies.  (*See* D's Mem. at 10, 14-15; Ps' Opp. at 13-15.)  Their agreement suffices to establish choice of law.  *Hilton Head Holdings b.v. v. Peck*, No. 11-CV-7768, 2012 WL 613729, at *5 (S.D.N.Y. Feb. 23, 2012).

B.      **Policy Interpretation**

Insurance policies "are interpreted according to general rules of contract interpretation." *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012). Courts "may not frustrate the intentions of the parties by altering the contract's terms or by reading into the contract meanings not contemplated by the parties. Instead, [courts] give the words of the agreement their ordinary and plain meaning." *Jakobson Shipyard*, 961 F.2d at 389. An insurance policy "must be construed to effectuate the intent of the parties as derived from the plain meaning of the policy's terms." *Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208, 215 (2d Cir. 1999). "Insurance policies are read in light of common speech and the reasonable expectations of a businessperson." *United Nat'l Ins. Co. v. Granoff, Walker & Forlenza, P.C.*, 598 F. Supp. 2d 540, 546 (S.D.N.Y. 2009). "Unambiguous provisions" in the agreement are interpreted according to their "plain and ordinary meaning." *Lavanant v. Gen. Accident Ins. Co. of Am.*, 79 N.Y.2d 623, 629 (1992). If a provision is ambiguous, however, it is construed against the insurer. *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 353 (1978).

"At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns. Corp.*, 830 F.3d 152, 156 (2d Cir. 2016); *see Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004) ("[I]f a contract is ambiguous . . . , a court has insufficient data to dismiss a complaint for failure to state a claim."). "Whether or not a writing is ambiguous is a question of law to be resolved by the courts." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015). A contract is unambiguous if "the contract language has a definite and precise meaning . . . and concerning which there is no

reasonable basis for a difference of opinion." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, 773 F.3d 110, 114 (2d Cir. 2014).

      **C.**    <u>**Scope of the Contract Exclusion Provision**</u>

      This motion turns on whether the language of the contract exclusion unambiguously excludes indemnification of Plaintiffs in the Underlying Action.  Defendant argues that it does because (1) the broad use of the word "Claim" in the provision encompasses the entirety of Underlying Action, not just the individual causes of action in the UAC, and thus the provision excludes coverage of the entire case based on the clear allegations dealing with contractual liabilities of "an Insured Person under any contract [or] agreement," (*see* D's Mem. at 9-11); and (2) even if the provision only encompassed individual causes of action rather than the entirety of a case, as Plaintiffs urge, each claim in the UAC, including the fourth claim for declaratory judgment, "aris[es] out of" contractual obligations because none could exist but for the existence of a contractual obligation, (*see id.* at 11-17).  I agree.

      **1.**      **"Claim"**

      The Policy defines "Claim" to include "a civil . . . proceeding made against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint." (Policy § II.B (emphasis in original).)  This suggests, as Defendant argues, that "Claim" means the entire legal proceeding rather than each separate cause of action raised in it.  *See XL Specialty Ins. Co. v. Agoglia*, No. 08-CV-3821, 2009 WL 1227485, at *8 (S.D.N.Y. Apr. 30, 2009) ("[T]he [insurance] Policy defines 'Claim' . . .  as 'any civil proceeding commenced by service of a complaint or similar pleading' . . . .  According to the [insurance policy], then, a 'claim' is defined as a legal proceeding and not . . . as each separate portion of a complaint specifying the legal theories defining a cause of action or the relief the plaintiff seeks."), *aff'd sub nom. Murphy*

*v. Allied World Assurance Co.*, 370 F. App'x 193 (2d Cir. 2010) (summary order).  Several courts agree with this interpretation, concluding that similar definitions of "claim" connote the entire civil proceeding rather than individual allegations or causes of actions in a complaint.  *See Horn v. Liberty Ins. Underwriters, Inc.*, 998 F.3d 1289, 1294 (11th Cir. 2021) (interpretation of "claim" was "simple because the insurance policy itself clearly and thoroughly defines the term as 'a civil proceeding against any Insured commenced by the service of a complaint or similar pleading'"); *Mkt. St. Bancshares, Inc. v. Fed. Ins. Co.*, 962 F.3d 947, 953 (7th Cir. 2020) ("claim" encompasses the entire civil action "based on the plain meaning of the policy's terms"); *Fed. Ins. Co. v. Raytheon Co.*, 426 F.3d 491, 497 (1st Cir. 2005) (interpreting "claim" to be "equivalent to a complaint" based on policy's definition as "a civil proceeding commenced by the service of a complaint or similar pleading").

Plaintiffs point to one New York appellate decision to argue that "Claim" means each individual cause of action or allegation despite the policy's clear definition.  (*See* Ps' Opp. at 18.) In *Westpoint International, Inc. v. American International South Insurance Co.*, 899 N.Y.S.2d 8 (App. Div. 2010), the Appellate Division rejected the argument that "because the policy defines 'Claim' to mean lawsuit, rather than cause of action, the determination of whether the exclusion applies must be based not on separate causes of action but on the complaint as a whole."  *Id.* at 9. The court, however, did not cite any authority to justify disregarding the contractual definition of "Claim," merely stating that it would be "unduly rigid" to determine whether the exclusion applied by looking at the whole complaint rather than the individual claims, and noting that in any event, "the thrust" of the case was not breaches of contract but rather tort and statutory violations.  *See id.*

I am unpersuaded that *Westpoint* creates ambiguity as to the meaning of "Claim" in the Policy.  Based on the clear language in the Policy definition, "Claim" refers to the entire Underlying Action rather than any individual cause of action or allegation raised in the UAC.

The Underlying Action is premised on Joseph's alleged improper transfer of Paraco stock shares "in violation of a right of first refusal and stock transfer prohibition" in the relevant Stock Agreements, and the UAC asserts six causes of action for breach of contract and three for constructive trust based on alleged unjust enrichment arising out of violation of the same agreements.  (UAC at 1-2; *see id.* at ¶¶ 35-44, 55-75.)  Because the Underlying Action clearly "alleg[ed], ar[ose] out of, [and was] based upon or attributable to any actual or alleged contractual liability or obligation of . . . an **Insured Person** under any contract [or] agreement," (Policy § III.N (emphasis in original)), the exclusion provision bars coverage and exempts any duty on the part of Defendant to defend or indemnify Plaintiffs.  *See Horn*, 998 F.3d at 1294 ("[T]he claim is the civil proceeding against [the defendant] commenced by the service of the . . . complaint.  Accordingly, if any of the allegations of the complaint are excluded from coverage, the entire lawsuit is excluded, even if the complaint contains allegations that would otherwise be covered."); *Mkt. St. Bancshares*, 962 F.3d at 953-55 (where "the term 'civil proceeding' spans the entire civil action begun by a third-party complaint against the insured," and the court found claims pertaining to an agreement to fall outside the scope of coverage, defendant "had no duty to defend against the damages argument"); *Agoglia*, 2009 WL 1227485, at *8 (because "'claim' is synonymous with a 'lawsuit,'" exclusion applies if underlying action, "*taken as a whole,* arise[s] out of the [excluded matter]") (emphasis in original).

##   2.   "Arising Out Of"

Even if Plaintiff's interpretation of "Claim" applies and each cause of action must be evaluated independently, the exclusion provision still bars coverage.  Courts in New York have construed the phrase "arising out of" broadly:  "In insurance contracts, the phrase arising out of is ordinarily understood to mean originating from, incident to, or having connection.  It requires only that there be some causal relationship between the injury and the risk for which coverage is provided or excluded."  *Lepore v. Hartford Fire Ins. Co.*, 374 F. Supp. 3d 334, 345 (S.D.N.Y. 2019), *aff'd*, 800 F. App'x 29 (2d Cir. 2020) (summary order).  If the facts alleged by a plaintiff in an underlying action clearly fall within a coverage exclusion, "and none of the causes of action that he or she asserts could exist but for the existence of the excluded activity or state of affairs, the insurer is under no obligation to defend the action."  *Scottsdale Indem. Co. v Beckerman*, 992 N.Y.S.2d 117, 121 (App. Div. 2014).   Thus, even if consideration of claims individually were appropriate, if a cause of action in the UAC could not exist but for the existence of a contractual obligation, Defendant would have no obligation to defend and indemnify Plaintiffs (as Underlying Defendants) as to that claim.

Plaintiffs concede that nine out of ten causes of action in the UAC "arise out of" a contractual obligation.  (*See* Ps' Opp. at 8-9; *see also* ECF No. 32 ("D's Reply") at 1.)  Counts I, II, V, VI, VIII, and IX in the Underlying Action all assert claims for breach of either the Paraco Class A or B Shareholder Agreements.  (UAC ¶¶ 35-40, 55-60, 66-71.)  These breach of contract claims clearly "aris[e] out of . . . actual or alleged contractual liability or obligation" as described in the exclusion provision, because these causes of action "could [not] exist but for the existence of the" shareholder agreements.  *Scottsdale Indem. Co.*, 992 N.Y.S.2d at 121.

Counts III, VII, and X in the UAC sought to impose a constructive trust on the Paraco shares transferred by the Underlying Defendants (Plaintiffs here).  (UAC ¶¶ 41-44, 61-65, 72-75.)  The basis for the constructive trust claims was that those "improper transfer[s]" unjustly enriched the Underlying Defendants at the expense of the Underlying Plaintiffs because they violated the shareholder agreements that gave the Underlying Plaintiffs a right of first refusal before Joseph could make the transfers.  (*Id.* ¶¶ 43, 64, 74.)  As Joseph's conduct is "explicitly alleged to be in [violation] of [a] contractual agreement[]," these causes of action "arise out of the contract" and "would [not] exist but for the contract."  *Lepore*, 374 F. Supp. 3d at 352-53.

But Plaintiffs argue that the exclusion provision does not apply to the remaining claim, Count IV in the UAC, (Ps' Opp. at 8), which sought a declaratory judgment that the Termination Agreement signed by Joseph, which purported to terminate the Class A Stock Agreement, was invalid and that the latter agreement "at all times was and remains in effect and governs the rights of Paraco shareholders," (UAC ¶¶ 53-54; *see id*. ¶¶ 45-52).  Because Count IV is premised on allegations that one agreement involving an insured person (the Termination Agreement) violated another agreement involving an insured person (the Class A Stock Agreement), it clearly arises out of the "contractual liability or obligation of . . . an **Insured Person** under any contract [or] agreement." (Policy § III.N (emphasis in original).)  In other words, the Underlying Plaintiffs contended that the Termination Agreement was invalid *because* it violated the Class A Stock Agreement – a claim that could not exist but for the contractual obligations created by the Class A Stock Agreement.

According to Plaintiffs, however, Count IV of the UAC contains allegations against the Board that *could possibly* create stand-alone liability based on breach of fiduciary duty and are sufficient to trigger Defendant's duty to defend and indemnify.  (Ps' Opp. at 16-20.)  In that

15

claim, the Underlying Plaintiffs allege that the Board "rubber stamp[ed]," (UAC ¶ 50), and wrongfully concealed, (*id.* ¶ 49), the purported Termination Agreement that violated the terms of the Class A Stock Agreement. (*See id.* ¶¶ 45-54). But allegations that, as Plaintiffs contend, "create potential standalone liability" on the Board's part or "*could have* resulted in liability *independent* of any breach of contract claims," (Ps' Opp. at 16 (emphasis in original)), are insufficient to avoid exclusion because the standard is whether the *cause of action in the underlying case* could have existed but for the alleged contractual violation. *See Scottsdale Indem. Co.*, 992 N.Y.S.2d at 121. Here the Underlying Plaintiffs brought a cause of action for a declaratory judgment that one contract violated another – a claim that, as discussed above, plainly could not exist but for the underlying contractual obligations. That they could have brought a different cause of action for alleged breach of fiduciary duty that might have resulted in Board liability apart from breach of contract is irrelevant because they did not do so. In other words, the relevant question is not whether the allegations *could possibly* give rise to a separate claim, but whether the allegedly wrongful conduct is "explicitly alleged to be in breach of [a] contractual agreement[]," *Lepore*, 374 F. Supp. at 352, which here it is. Because the underlying cause of action is "wholly bound up in Plaintiffs' contractual obligations," *id.* at 338; *see id.* at 352-53 (even though allegedly defamatory statements *could* give rise to separate tort of defamation, where "the allegedly defamatory conduct is described specifically as [being] in breach of contractual agreements," contract exclusion in insurance agreement applied), Count IV arises out of a contract and the exclusion applies.

Moreover, the allegations on which Plaintiffs rely were made with respect to demand futility for the derivative claims, to explain why requesting that the Board sue Joseph would be

pointless.[6]  (*See* UAC ¶¶ 45-50.)  They do not support any claim against the Board or its

members in their capacity as Board members.  Plaintiffs point to mere allegations against the

Board, but allegations of wrongful conduct alone are not enough to constitute a claim.  *See Med.*

*Mut. Ins. Co. of Me. v. Indian Harbor Ins. Co.*, 583 F.3d 57, 63 (1st Cir. 2009) ("The insurance

policy at issue here is not implicated because, no matter what conduct the complaint describes, it

is not a claim 'made against' any of the directors or officers.  That contention is the linchpin of

coverage. . . .  [F]ree-standing allegations of wrongful conduct by an insured corporation's

directors and officers cannot be the equivalent of a claim made against those directors and

officers."); *85-10 34th Ave. Apartment Corp. v. Nationwide Mut. Ins. Co.*, 725 N.Y.S.2d 98, 99

(App. Div. 2001) (where policy "expressly limits recovery to those instances where an officer or

director is entitled to indemnification from the corporation, or where an officer or director is

obligated to pay an amount based upon his legal liability for an actual or asserted wrongful act,"

and no directors or officers were named as defendants in underlying action, plaintiff was not

entitled to coverage); *Buckingham Apartments, Ltd. v. Liberty Mut. Ins. Co.*, 508 N.Y.S.2d 493,

495 (App. Div. 1986) ("[T]here is no indication that officers or directors were entitled to

indemnification or that they were obligated to pay any amount.  Indeed, it would have been

impossible to make such a showing in view of the fact that no directors or officers were named

---

[6] Since claims asserted in a shareholder derivative suit belong to the corporation,
it is incumbent upon shareholder plaintiffs to make a demand upon the
corporation's board of directors prior to commencing an action.  Indeed, [a]
shareholder's right to bring a derivative action does not arise until he has made a
demand on the board of directors to institute such an action directly, such demand
has been wrongfully refused, or until the shareholder has demonstrated, with
particularity, the reasons why pre-suit demand would be futile.

*In re Veeco Instruments, Inc. Sec. Litig.*, 434 F. Supp. 2d 267, 273 (S.D.N.Y. 2006).

as defendants in the aforementioned action, and they therefore had no reason to defend themselves.").  Therefore, that Count IV contains allegations of misconduct by the Board in relation to demand futility is insufficient to trigger coverage under the Policy in the absence of claims against any Board member in that capacity.

As all ten causes of action in the UAC could not exist but for the existence of a contractual obligation, the Policy's contract exclusion provision applies even if each claim is to be evaluated individually, and Defendant had no obligation to defend or indemnify Plaintiffs in the Underlying Action.

Therefore, Plaintiffs' claims are dismissed.

## IV.   <u>LEAVE TO AMEND</u>

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

After having the benefit of a pre-motion letter from Defendant, (*see* ECF No. 11), and the discussion at the September 1, 2022 pre-motion conference, (*see* Minute Entry Dated Sept. 1, 2022), Plaintiffs were given leave to amend their complaint and chose not to do so.  In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second

amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim."); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.").

Further, Plaintiffs have not asked to amend again or otherwise suggested that they are in possession of facts that would cure the deficiencies identified in this opinion. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (deciding that the plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (finding that district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend). Indeed, "[t]he problem with [Plaintiffs'] causes of action [are] substantive," and "better pleading will not cure it."

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Accordingly, the Court declines to grant

leave to amend *sua sponte*.

**V.**     **CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss is GRANTED.  The Clerk of

Court is respectfully directed to terminate the pending motion, (ECF No. 26), and close the case.

**SO ORDERED.**

Dated: June 22, 2023
       White Plains, New York

       _____
       CATHY SEIBEL, U.S.D.J.